IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) )  ) ) 1:07-cr-26 |
| v. | ) 1:13-cv-136 ) |
| MARJORIE DIEHL-ARMSTRONG | ) |

### MEMORANDUM OPINION

Pending before the Court is the MOTION TO VACATE JUDGMENT AND SENTENCE (ECF No. 297) filed, *pro se*, by Defendant, Marjorie Diehl Armstrong. Defendant also filed an "AMENDED MOTION WITH MATERIAL ON BARNES TESTIMONY" (ECF No. 299) and numerous handwritten supplements to her motion (with attachments thereto) and letters addressed to the Court with information pertaining to her motion (ECF Nos. 300, 301, 303, 307).[1] The government filed a response in opposition to the motion (ECF No. 305). Defendant then filed a reply and numerous supplements/amendments thereto (ECF Nos. 308, 309, 310, 311, 312, 313, 314, 315, 316, 317, 318, 321, 322, 323). Accordingly, the motion is ripe for disposition.

**I. Background**

On July 9, 2007, Defendant was charged in a three-count indictment with conspiracy to commit bank robbery, in violation of 18 U.S.C. §§ 371 and 2; armed bank robbery and using a destructive device that result in the death of another, in violation of 18 U.S.C. §§ 2213(d), 2113(3), and 2; and using and carrying a firearm during and in relation to a crime of violence, in

---

1. The Court previously denied Defendant's motion to appoint counsel "without prejudice to renew, if appropriate, upon the Court's resolution of [297] petitioner's Motion to Vacate under 28 U.S.C. § 2255." ECF No. 324. Defendant has not renewed her request to have counsel appointed for her. Nevertheless, the Court reaffirms its prior ruling that Defendant has not established the need for the appointment of counsel. *See* 18 U.S.C. § 3006A(a)(2)(B) ("Whenever . . . the court determines that the interests of justice so require, representation may be provided" in a § 2255 proceeding.)

1

violation of 18 U.S.C. §§ 9249c)(1)(B)(ii) and 2. Defendant initially pled not guilty. On May 22, 2008, the Court, upon motion of Defense counsel, conducted a competency hearing, after which it issued an order concluding that Defendant was not competent at that time and "committed [her] to the custody of the Attorney General for hospitalization and treatment[.]" ECF No. 83. Following a second competency hearing on April 27, 2009, the Court determined that Defendant had recovered to the extent that she would be able to properly assist in her defense and thus was competent to stand trial. ECF No. 127. Thereafter, Defendant, through counsel, filed a flurry of pre-trial motions. She sought, among other things, to change the venue and venire and to have the jury sequestered. She also sought to suppress statements made to law enforcement prior to her indictment. Both of these motions were denied. ECF Nos. 194, 207.

Trial commenced on October 15, 2010. After the government rested its case on October 22, 2010, Defense counsel orally moved to continue the trial until her proposed expert witness, Dr. Robert Sadoff, could return from an overseas trip. The Court denied the motion. Ultimately, the jury found Defendant guilty on all counts, and she was sentenced to life plus 360 months' imprisonment.

Following sentencing, Defendant appealed to the United States Court of Appeals for the Third Circuit. She raised four issues, but the Court of Appeals only found three worthy of discussion: whether the District Court erred in finding her competent to stand trial, whether the District Court should have suppressed the pre-indictment statements she made to law enforcement, and whether her motion to continue was erroneously denied.[2] The Court of Appeals found each of Defendant's contentions to be without merit and affirmed. *See United States v. Diehl-Armstrong*, 504 F. App'x 152 (3d Cir. 2012).

---
2. The Court of Appeals found Defendant's fourth issue – having to do with the inadmissibility of Dr. Sadoff's testimony – moot in light of the District Court's denial of her request for a continuance.

On May 16, 2013, Defendant, acting *pro se*, filed this motion pursuant to 28 U.S.C. § 2255.[3] The Court will address the claims raised in this motion below.[4]

## II. Discussion

28 U.S.C. § 2255 permits a "prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . [to] move the court which imposed the sentence to vacate, set aside or correct the sentence." In her various filings, Defendant raises a litany of issues, which the government has ably summarized as follows:

> At Doc. 297:
>
> 1) The autopsy report of Dr. Eric Vey concerning the death of Brian Wells was admitted into evidence in violation of Diehl-Armstrong's rights under the Confrontation Clause of the U.S. Constitution. Trial Counsel provided ineffective assistance of counsel by failing to object to its admission.
>
> 2) The testimony of various witnesses was so consistent that the witnesses appeared to have been following a script, and the uniformity of the witnesses' testimony suggests improper coaching and a lack of credibility.
>
> 3) The testimony of various inmate witnesses about Diehl-Armstrong's pre-indictment statements should have been suppressed because they were the product of improper interrogation by agents working for the government in violation of her Sixth Amendment right to counsel.
>
> 4) Diehl-Armstrong's friend and personal attorney, Larry D'Ambrosio, provided pre-indictment ineffective assistance of counsel to her and his assistance to her represented a conflict of interest.
>
> 5) The government's use of "leading questions" in the questioning of various trial witnesses was improper (Repeated at Doc. 300-1 concerning the examination of

---

3. This case was originally assigned to now-former United States District Judge Sean J. McLaughlin, who presided over Defendant's trial and sentencing hearing. Following Judge McLaughlin's retirement, the case was re-assigned to United States District Judge David S. Cercone. On December 3, 2015, however, the case was re-assigned to the undersigned for all further proceedings.

4. A district court has the authority to dismiss a motion to vacate without holding an evidentiary hearing when it is clear from both the motion and the record that the movant is not entitled to relief. *See* 28 U.S.C. § 2255(b); Rule 4(b) of the Rules Governing § 2255 Proceedings. As more fully explained herein, Defendant has not demonstrated a prima facie entitlement to relief. Accordingly, the Court will resolve this motion without a hearing.

FBI Special Agent Jerry Clark), and trial counsel was ineffective by failing to object.

6) The testimony of various trial witnesses was not credible. Diehl-Armstrong deems them the most "altruistic criminal snitches" because they testified that disclosing Diehl-Armstrong's incriminating statements was the right thing to do.

At Doc. 300:

8) Appellate counsel Douglas Sughrue sabotaged her appeal because at trial he argued that she had not made incriminating statements and on appeal he claimed that the incriminating statements represented the strongest evidence against her.

9) Attorney Larry D'Ambrosio wronged her by taking steps to diminish her inheritance, was involved in setting fire to her home, and took money awarded from her wrongful death suit.

10) The cross-examination of Larry D'Ambrosio with a recording from Mary Beth Behan was done in error.

11) Defendant was denied her Sixth Amendment right to the effective assistance of trial counsel . . .[5]

***

At Doc. 300-1:

12) The Court allowed trial counsel to cause Diehl-Armstrong to lose competency.

13) Ken Barnes wrongly testified at trial the he got nothing for testifying.

14) The representation of Ken Barnes by defense counsel, Allison Scarpiti, represented a conflict of interest which greatly prejudiced Diehl-Armstrong.

15) The tape recorded message from Mary Beth Behan should not have been admitted as evidence because Behan was just mad at D'Ambrosio over one of Diehl-Armstrong's rings.

16) Unknown co-conspirators were never found.

17) Evidence of certain batteries being used by a possible alternative perpetrator was not used at trial.

---

5. The Court has omitted Defendant's specific allegations of ineffective assistance of counsel because they will be discussed in detail *infra*.

4

18) Ken Barnes' testimony differed from the testimony of another witness who was not called to testify at trial.

19) Diehl-Armstrong disagrees with various factual averments made in the government's appellate brief.

20) It was trial error to admit into evidence the hospital discharge summary of Floyd Stockton, Government Exhibit 62.

Doc. 301:

21) Diehl-Armstrong challenges whether the government's motive evidence, i.e., that she killed James Roden to keep him from disclosing the collar bomb plot to authorities, made sense.

22) Diehl Armstrong again complains about evidence of an alleged alternate perpetrator and grand jury testimony of a witness who did not testify at trial.
At Doc. 303:

23) Diehl-Armstrong challenges the trial testimony of Charles Brandt (identifying her as a gentleman) and inmates Brininger and Bishop (claiming that she was not close to them and that they are pathological liars).

24) Diehl-Armstrong complains that Ken Barnes admitted that he had lied to authorities on many occasions before he testified at trial.

25) Diehl-Armstrong complains that she had been robbed by Ken Barnes and others.

26) Diehl Armstrong claims that according to a local professor, Bill Rothstein was the mastermind behind the collar bomb plot.

ECF No. 305 at 1-4.

Most of these claims fail on procedural grounds. Specifically, Defendant raised the fourth issue, regarding alleged pre-indictment ineffective assistance of counsel, on direct appeal, and the Court of Appeals held that this claim was baseless since Defendant's Sixth Amendment right to counsel had not yet attached. *See Diehl-Armstrong*, 504 F. App'x at 156. Absent exceptional circumstances not present here, such as an intervening change in the governing law, Section 2255 generally "may not be employed to relitigate questions which were raised and considered

on direct appeal." *United States v. DeRewal*, 10 F.3d 100, 105 n.4 (3d Cir.1993) (citations omitted). Accordingly, the Court need not address the merits of this claim.

Similarly, Defendant could have – but did not – raise most of her other claims on direct appeal: to wit, claims (1), (2), (3), (5), (6), (7), (9), (10), (12), (13), (14), (15), (16), (17), (18), (19), (20), (21), (22), (23), (24), (25), (26). "Section 2255 petitions are not substitutes for direct appeals and serve only to protect a defendant from a violation of the constitution or from a statutory defect so fundamental that a complete miscarriage of justice has occurred." *United States v. Cepero*, 224 F.3d 256, 267 (3d Cir. 2000) (citing *Reed v. Farley*, 512 U.S. 339, 348 (1994)); *Young v. United States*, 124 F.3d 794, 796 (7th Cir. 1997). *See also United States v. Essiq*, 10 F.3d 968, 979 (3d Cir. 1993) ("[Section] 2255 is no longer a necessary stand-in for the direct appeal of a sentencing error because full review of sentencing errors is now available on direct appeal."). Arguments that could have been made on direct appeal cannot be raised in a Section 2255 motion unless the petitioner can demonstrate cause and prejudice. *See Essiq*, 10 F.3d at 979 (holding that the cause and prejudice standard of *United States v. Frady*, 456 U.S. 152, 167–68 (1982), "applies to § 2255 proceedings in which a petitioner seeks relief from alleged errors in connection with his sentence that he has not directly appealed"); *Bousley v. United States*, 523 U.S. 614, 622 (1998) ("Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'"). Defendant fails to set forth any basis to conclude that she had good cause for failing to raise these issues on appeal or was prejudiced by the failure to raise any of these issues, which when assessed on their merits, are baseless. Thus, these claims will be denied without any additional discussion.

That leaves only Defendant's myriad claims of ineffective assistance of counsel. To establish a claim for ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), a defendant "must show that (1) his or her attorney's performance was, under all the circumstances, unreasonable under prevailing professional norms, and, unless prejudice is presumed, that (2) there is a 'reasonable probability that, but for counsel's unprofessional errors, the result would have been different[.]'" *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992) (quoting *Strickland*, 466 U.S. at 694). In other words, "a defendant must show both unprofessional conduct and, in most cases, prejudice as a result." *Id.* As the Court of Appeals has explained,

> In reviewing counsel's performance, [a court] must be highly deferential. [A court] must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. Moreover, [a court] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996) (citing *Strickland*, 466 U.S. at 689-90) (internal quotation marks and citations omitted). "It is only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." *United States v. Kauffman*, 109 F.3d 186, 190 (3d Cir. 1997).

As accurately summarized by the government, Defendant appears to raise the following allegations of ineffective assistance with respect to her trial counsel in her motion and amendments/supplements thereto:

> a) Trial counsel deliberately distorted the facts in closing argument by telling the jury that they did not have to like Diehl-Armstrong, take her home with them, or invite her to a birthday party . . . . b) Trial counsel failed to call defense witness Dr. Robert Sadoff. c) Trial counsel selected a jury without her approval,

7

specifically, a wife of a deputy sheriff, the father of a probation officer, and people on the jury who said they were prejudiced. d) Trial counsel failed to obtain a change of venue or to sequester the jury. e) Trial counsel failed to object when Diehl-Armstrong stated to him on direct examination "you are making me sick". f) Trial counsel failed to object to the government's use of leading questions. g) Trial counsel failed to object to the admission into evidence of the autopsy report of Dr. Eric Vey concerning the death of Brian Wells.

ECF No. 305 at 2-3. Defendant also alleges in one of her handwritten submissions filed after the government filed its response that trial counsel was ineffective because he "wouldn't call [Defendant's] witnesses or let a paid investigator investigate her leads." ECF No. 322. With respect to her appellate counsel, Defendant alleges that he "sabotaged [her] appeal" in that "he said in closing argument at trial 'defendant made no incriminating statements'" then on appeal, he stated that "'Defendant's incriminating statements were [unintelligible] evidence against her." ECF No. 300.

As an initial matter, the Court notes that these allegations are difficult to decipher and, even when intelligible, they are nonetheless vague, conclusory, and disjointed and, thus, facially insufficient to state a claim of ineffective assistance of counsel. *See United States v. Wilson*, No. CIV. 05-1786, 2006 WL 1428312, at *1 (W.D. Pa. May 22, 2006) (citing *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3d Cir. 1991)) (explaining that "it is well settled that vague and conclusory allegations cannot establish ineffective assistance of counsel"). However, even when liberally construed, each of Defendant's claims fail on their merits because they are either legally or factually baseless (or both).

A.   **Statements during Closing Argument**

Defendant takes issue with several statements made by Defense counsel during his closing argument. In particular, Defendant argues that counsel was ineffective for saying, "I'm not asking you to like Marjorie Diehl-Armstrong as she sits there . . . . Your job is not to like her,

your job is not to invite her over for dinner or have a birthday party for her. Your job is to understand that once you are a collective jury and you go back there to decide the facts, to know that the oath you swore first starts out with the presumption of innocence. And through the government's story, have they proved to you beyond a reasonable doubt each and every element of each and every crime with which my client is charged. And I would submit to you, no, they haven't." ECF No. 283-1.

Contrary to Defendant's suggestion, these statements reflect sound trial strategy and thus cannot support a claim for ineffective assistance of counsel. It was perfectly reasonable for Defense counsel to concede that Defendant may not have been a likeable person. In doing so, counsel was not attempting to highlight her un-likeability. Rather, "the reason counsel mentioned those details was precisely to remind the jury that they were legally irrelevant. That was not an unreasonable tactic." *Yarborough v. Gentry*, 540 U.S. 1, 9 (2003) (citing F. Bailey & H. Rothblatt, *Successful Techniques for Criminal Trials* § 19:23, p. 461 (2d ed. 1985)) (holding that counsel was not ineffective for conceding that his client "was a 'bad person, lousy drug addict, stinking thief, jail bird'"). As the United States Supreme Court has explained,

> While confessing a client's shortcomings might remind the jury of facts they otherwise would have forgotten, it might also convince them to put aside facts they would have remembered in any event. This is precisely the sort of calculated risk that lies at the heart of an advocate's discretion. By candidly acknowledging his client's shortcomings, counsel might have built credibility with the jury and persuaded it to focus on the relevant issues in the case.

*Id.* (citing J. Stein, *Closing Argument* § 204, p. 10 (1992-1996)). In view of this, Defendant's first claim provides no basis for granting the requested relief.

### B. Failure to Call Dr. Sadoff

Defendant next claims that counsel failed by not calling Dr. Sadoff to testify. As already noted, however, Dr. Sadoff was proffered by Defendant as an expert witness regarding

9

Defendant's mental health status. On the eve of trial, the government filed a motion in limine to preclude Dr. Sadoff from testifying, on the basis that his testimony ran afoul of Federal Rule of Evidence 704(b), which the government argued prevents a medical or psychological professional from testifying that a defendant did or did not possess the requisite mental state. The Court granted the motion. After Defendant clarified the scope of Dr. Sadoff's proposed testimony, the government responded by filing another motion in limine, in which it argued that the doctor's testimony would nonetheless be inadmissible under the Insanity Defense Reform Act, 18 U.S.C. § 17. Before that motion was resolved and following the close of the government's case, Defense counsel notified the Court that Dr. Sadoff would be leaving the country and not expected to return until on or after November 5, 2010. Because of Dr. Sadoff's travel plans, Defense counsel asked the Court to hold the trial in abeyance until Dr. Sadoff returned to the United States. The Court declined to do so, finding that Defense counsel had ample time to secure Dr. Sadoff's testimony for use at trial, including by video if necessary. The Court also noted that granting a continuance would increase the risk that the jury would be exposed to outside sources of information and would lose some of its recollection of the evidence. In any event, the Court found that Dr. Sadoff's testimony would be inadmissible for the reasons stated by the government. On appeal, the Court of Appeals held that "it was entirely proper to deny [Defendant's] motion." *Diehl-Armstrong*, 504 F. App'x at 156.

Against this backdrop, Defendant cannot credibly argue that her counsel was ineffective for failing to present Dr. Sadoff's testimony. He tried and failed to present such testimony at trial and then raised the issue again on appeal. After his efforts were rebuffed at each level, there was nothing left for him to do. Thus, this claim must be denied.

## C. Selection of Jurors without Defendant's Approval

Defendant claims in one of her handwritten submissions that counsel was ineffective for selecting "with her disapproval when she was at lunch . . . an Erie Deputy Sheriff woman who is married to Erie Deputy Sheriff," the father of an "Erie [unintelligible] Probation and Parole person," and "people . . . who said in voir dire that they were prejudiced either inherently or by [unintelligible] media coverage" to serve on the jury. ECF No. 300-1.

These allegations do not appear to have any basis in fact. First, the jury was not selected "when she was at lunch," as Defendant appears to suggest. The transcript of the jury selection makes clear that the process of exercising peremptory strikes played out in open court, with both the potential jurors and Defendant present. And as the government points out, Defense counsel made every effort to include Defendant in this process, even going so far as to inform the Court that he might need take short recesses to discuss potential selections with her or in the event that she had an "outburst" in front of the jurors. Second, after having reviewed the transcripts, Defendant's vague assertions about characteristics of members of the jury also seem to be devoid of any factual basis. While there was one member of the panel (Juror No. 160) who said that she and her husband were members of the Erie County Sheriff's Department "scuba team," she was eventually selected as an alternate and did not take part in deliberations. Moreover, none of the jury members ever described being the father of an Erie Probation and Parole officer.[6] Likewise,

---

6. Even if the jury did, in fact, include members who possessed these characteristics, counsel would not be ineffective for failing to strike them. In order to succeed on such a claim, a defendant must rebut the presumption that the prospective jurors were impartial. *See Irvin v. Dowd*, 366 U.S. 717, 723 (1961). To make out an ineffective assistance of counsel claim that is based on trial counsel's failure to strike a biased juror, the petitioner "must show that the juror was actually biased." *Morgan v. Illinois*, 504 U.S. 719 (1992). "'An attorney's actions during voir dire are considered to be matters of trial strategy . . . . A strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness.'" *Miller v. Webb*, 385 F.3d 666, 672–73 (6th Cir. 2004). "A tactical or strategic decision is ineffective only 'if it was so patently unreasonable that no competent attorney would have chosen it.'" *Holladay v. Haley*, 209 F.3d 1243, 1253 n. 6 (11th Cir. 2000). Defendant's barebones assertions do not come close to making this required showing.

during the carefully managed four-day jury selection process, Judge McLaughlin took special care to question any member of the venire who indicated that he or she was predisposed to decide the case in a certain manner, and he was quick to dismiss anyone who expressed such views, either upon motion of Defense counsel or on his own initiative. The resulting jury was as impartial as is constitutionally required. For all of these reasons, Defendant's claim of ineffective assistance of counsel with respect to the jury selection process is entirely without merit.

**D.     Failure to Seek Change of Venue/Venire and Jury Sequestration**

Defendant argues that her counsel should have sought a change in venue/venire or to have the jury sequestered. However, as was the case with Defendant's argument regarding Dr. Sadoff, counsel *did* make such requests, and they were denied prior to trial. Thus, once again, Defense counsel cannot be faulted for trying, albeit unsuccessfully, to raise the issues that Defendant believes should have been raised.

**E.     Causing Defendant to "Lose Competency"**

Defendant argues that her counsel's failure to object whenever she said, "'he was making her sick' . . . greatly affected [her] judgment at trial and her ability to testify." ECF No. 300-1 at 1. Having reviewed the entirety of Defendant's testimony at trial, it is not clear what she is referring to. She does not appear to have ever said that her attorney "was making her sick," as she claims. She did, however, tell her attorney during her direct examination, "I don't want you to talk to me too much because you're stressing me. I think you've been stressing me too much already. You know I tried to have you removed because I don't think you're working hard enough for me. . . ." ECF No. 282-1 at 63:25 – 64:1-3. Later, she asked Judge McLaughlin, "Can I just leave – I'm allowed to leave if I want to, it's my trial. I can't take you any more, I really can't. You're driving me crazy here. I can't take it, you're asking me stupid questions. You're

confusing me. You sound more like a prosecutor than you are a defense attorney. I don't think the jury is even understanding anything I'm trying to say." ECF No. 282-1 at 96:14-20.

Insofar as this is what Defendant is referring to, the Court can find no basis upon which counsel should have objected. Perhaps counsel should have requested a recess to consult with his client and attempt to calm her down. However, his failure to do so was not so egregious as to have fallen below the *Strickland* standard. Nor has Defendant offered any explanation as to how she was prejudiced by counsel's failure to object. Indeed, following the aforementioned portions of testimony, the direct examination of Defendant continued, and she was able to communicate her version of events with considerable leeway from the government and the Court. More to the point, during the remainder of her time on the stand she did not appear to be in distress or incapacitated. Rather, she appears to have been displaying a clear understanding of what was transpiring, contrary to her protestations to the contrary. This claim must be dismissed on that basis.

This claim dovetails with Defendant's suggestion that Defense counsel "caused her to lose competency" – a phrase which appears numerous times throughout Defendant's filings. It is not clear what Defendant means by this. Defense counsel initially succeeded in having Defendant declared incompetent to stand trial. Thereafter, she was committed to the Federal Medical Center in Carswell, Texas, where she underwent four months of treatment, following which she was declared by staff at that facility to be competent. Following a second competency hearing, the Court agreed. Defense counsel took issue with the Court's competency finding, but it was upheld by the Third Circuit Court of Appeals. So, to the extent that Defendant is arguing that Defense counsel failed to sufficiently raise the issue of her competency, she is misguided. If, however, Defendant means to suggest that she became incompetent to stand trial during the

course of the trial, she is also misguided. As already mentioned, Judge McLaughlin closely monitored Defendant's behavior at trial, including while she was on the witness stand. While she was, at times, difficult – both as a witness and as a client – Judge McLaughlin never saw the need to question her competency. In fact, as the government points out, he actually remarked (albeit during jury selection) that he had "absolutely no concern or doubt about the defendant's competency. She has been engaged, she is interested, she's following things. Albeit she continues to have some disagreements with [defense counsel]." ECF No. 282-2 at 101-12. Since none of Defendant's conduct at trial appears to have called into question her competency, Defense counsel did not render ineffective assistance in failing to renew his claim that Defendant was incompetent once the trial had begun.

### F. Failure to Object to Leading Questions/Hearsay

Defendant next argues that counsel was ineffective for failing to object to the government's use of leading questions and the admission of hearsay throughout the trial. As the Court of Appeals has explained,

> Whether or not to object to leading questions is a matter of trial strategy, and it is common practice for trial attorneys to not object to leading questions if they feel it is not helpful to do so. . . . The use and timing of objections at trial is a quintessential matter of strategy and discretion on the part of the trial attorney, and will very seldom constitute objectively deficient representation.

*United States v. Nguyen*, 379 F. App'x 177, 181 (3d Cir. 2010). Such is the case here. Indeed, many of the examples of allegedly leading questions were not, in fact, leading or, if they were, were proper for the reasons explained in the government's response. Thus, any objection would have been baseless, and counsel cannot be faulted for not making baseless objections. Furthermore, Defendant has not pinpointed any instances where hearsay was improperly admitted. As such, she has failed to plausibly show that counsel was not deficient in this regard.

Nor has Defendant identified in any way how counsel's alleged failure to interpose objections prejudiced her. Therefore, this claim will be rejected.

G. **Failure to Object to Autopsy Report**

Defendant's next contention with respect to her trial counsel's performance is that he should have objected to the admission of the autopsy report prepared by Dr. Eric Vey. "What evidence should be introduced and whether and how to conduct cross-examination of a witness are trial strategies over which counsel generally has decision-making authority." *United States v. Lilly*, No. CIV.A. 04-503, 2006 WL 566499, at *5 (W.D. Pa. Jan. 3, 2006), *aff'd*, 536 F.3d 190 (3d Cir. 2008) (citing *Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1433 (3d Cir. 1996); *United States v. Rodriguez*, 68 F. App'x 237, 243 (2d Cir. 2003)). "This Court must be deferential to counsel's tactical decisions, must not employ hindsight, and must give counsel the benefit of a strong presumption of reasonableness." *Id.* (citing *Deputy v. Taylor*, 19 F.3d 1485, 1493 (3d Cir. 1994)). As the Court of Appeals has explained, "ineffectiveness will not be found based on a tactical decision which had a reasonable basis designed to serve the defendant's interests." *Werts v. Vaughn*, 228 F.3d 178 (3d Cir. 2000)).

In this case, Defense counsel reasonably decided not to dispute the manner in which Brian Wells died. His manner of death was irrelevant to Defense counsel's theory of the case, which was that Defendant simply played no part in the alleged conspiracy that resulted in Wells' death. Thus, the Court cannot conclude that Defendant has overcome the strong presumption that her counsel's performance was reasonable. Moreover, even if counsel's performance was somehow deficient, Defendant has not offered any explanation whatsoever as to how the alleged deficiencies in this regard caused her prejudice. The autopsy report was a small and largely inconsequential piece of the government's evidence against Defendant, vastly overshadowed by

the evidence – particularly the testimony of the various jailhouse informants and Kenneth Barnes – that linked Defendant to the charged conspiracy. Even if the report had been contested, it would be impossible to conclude that it would have made a difference in the outcome, in light of this other evidence against Defendant.

### H. Failure to Call Certain Witnesses and Hire Paid Investigator

Defendant alleges that counsel failed to call certain witnesses. Though it is not exactly clear, she appears to be suggesting that counsel should have called Floyd Stockton's ex-wife to testify. According to Defendant, this woman "had evidence that may have gotten [her] acquitted." ECF No. 323. Since Defendant has not clearly explained in her myriad filings what this woman's testimony would have entailed, though, the Court cannot determine whether Defendant was, in fact, prejudiced by counsel's failure to call her. *See Clark v. Ricci*, 285 F. App'x 933, 936 (3d Cir. 2008) (denying ineffective assistance of counsel claim where defendant failed to show that any of the proposed witnesses "would have provided relevant evidence").

Defendant also claims, in a similarly conclusory manner, that counsel would not hire an investigator to investigate her leads regarding new evidence. This contention, however, is belied by the record. Defense counsel *did* enlist the services of an investigator, Denis Lagan. Moreover, to the extent that Defendant simply disagrees with the manner in which the investigator went about his work, she has not offered any explanation about what the "new evidence" was or how she was prejudiced by counsel's failure to pursue her alleged leads.

### I. Ineffective Assistance of Appellate Counsel

Lastly, Defendant's only claim with respect to her appellate counsel's performance is that he "sabotaged" her appeal by stating in his appellate brief something to the effect of, "the incriminating statements she made to law enforcement were the worst evidence against her."

This statement does not at all evince Defense counsel's intent to "sabotage" Defendant's appeal. Instead, counsel was making the inarguable observation that the admission of a defendant's inculpatory statements is damaging evidence of guilt, in the context of arguing that Defendant was prejudiced by Mr. D'Abrosio's alleged ineffective assistance of counsel during the pre-indictment period. Defendant's conclusory allegation about appellate counsel's ineffective performance is, therefore, belied by the record and not worthy of further discussion.

III.  Conclusion

The Court has endeavored to address all of the arguments raised in Defendant's numerous submissions, which run the gamut in terms of legibility and coherency. After having done so, the Court concludes that there is no basis for providing her the relief she has requested. Defendant's claims were either raised and rejected on direct appeal, procedurally defaulted because they could have been raised on direct appeal, or are completely lacking in merit. Accordingly, Defendant's MOTION TO VACATE JUDGMENT AND SENTENCE (ECF No. 297) will be **DENIED** in all respects.[7] Finally, a certificate of appealability will not be issued pursuant to 28 U.S.C. § 2253 because Defendant has not made a substantial showing of the denial of a constitutional right. An appropriate order follows.

McVerry, S.J.

---

7. Insofar as Defendant has raised other grounds for relief not specifically addressed herein, they are also denied.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|                            |   |                    |
|----------------------------|---|--------------------|
| UNITED STATES OF AMERICA   | ) |                    |
|                            | ) | 1:07-cr-26         |
| v.                         | ) | 1:13-cv-136        |
|                            | ) |                    |
| MARJORIE DIEHL-ARMSTRONG   | ) |                    |

## ORDER

**AND NOW**, this 28th day of December, 2015, in accordance with the foregoing Memorandum Opinion, is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that Defendant's MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY (ECF No. 297) is **DENIED**.

Civil Action No. 1:13-cv-136 shall be docketed **CLOSED**. No certificate of appealability shall issue.

BY THE COURT:

s/Terrence F. McVerry
Senior United States District Judge

cc: **Marjorie Diehl Armstrong**
08916-068
FMC Carswell
P.O. Box 27137
Fort Worth, TX 76127
(via First Class U.S. mail)

**Marshall J. Piccinini**
Email: marshall.piccinini@usdoj.gov

(via CM/ECF)